## MARYLAND CASUALTY CO. v. McWILLIAMS.

### No. 12499.

United States Court of Appeals
Fifth Circuit.

July 14, 1949.

Rehearing Denied Aug. 5, 1949.

Ben Connally, Houston, Tex., for appellant.

J. Edwin Smith, Houston, Tex., for appellee.

Before HUTCHESON, SIBLEY, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

A fourteen-pound brick fell on the head of the plaintiff, John McWilliams, while he was working in the course of his employment, inflicting injury compensable under the Texas Workman's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq. Weekly compensation was paid to him from the date of his injury on November 19, 1946, until January 21, 1947, when, in consideration of the payment of an additional $40.00, he signed a full release. He, the insurance carrier, and its physician, then thought that he had fully recovered and was able to return to work, but quite the contrary developed.[1] The uncontested settlement was approved by the Industrial Accident Board. This suit, brought by next friend, to set aside the settlement alleged:

(a) That at the time of the settlement, McWilliams did not have the mental capacity to make same.

(b) That there was a mutual mistake by both McWilliams and the insurance carrier as to the extent, duration, and character of his injuries.

The Court below made the following findings of fact and conclusions of law:

"(a) There was a Pre-Trial Stipulation. * * * It is referred to and adopted.

"(b) Plaintiff is a negro working man. He cannot read. He can only write his name, and that very indifferently. He is probably below the average in intelligence.

"(c) At the time of the settlement, Plaintiff was practically well and able to go back to work. He did go back to work for the same employer, but after working a few days, became worse, and has grown progressively worse, so that at the time of the trial, I think the weight of the evidence shows that he is mentally incapacitated. I think his incapacity is a result of his injury.

"(d) He was probably not mentally in-

[1] Dr. Greenwood testified that when he saw McWilliams at Jefferson Davis Hospital on February 5, 1947, he had had some sort of a spell and had become confused and was unable to talk and has been unable to talk since; that he continues to complain of headaches; has difficulty of speech; that he was then placed in Hermann Hospital and bilateral trephine openings were made into his skull and considerable subdural fluid was found, indicating irritation and showing edema or excessive fluid in the brain substance as well as swelling. The doctor thought that the trouble was not disconnected with the blow on the head caused by the fall of the brick.

476

capacitated at the time of the settlement in the sense that he did not understand what he at the moment was doing. But he did not know his condition and did not clearly understand that under the settlement if he became worse (as he did), he could recover no further compensation.

"Conclusions of Law.

"1. I think Plaintiff's mental condition was such at the time of the settlement that a Court of Equity must take that into consideration. While there was no fraud whatsoever practiced on Plaintiff by Defendant, I cannot see my way clear, sitting in Equity, to hold that for a meager sum of $40, Plaintiff under the facts must lose his right to a hearing before the Industrial Accident Board and to have his day in Court and have a Court or Jury pass upon the question of whether or not his present condition is due to the injury, whether he is totally or partially incapacitated, and the extent and length of such incapacity.

"2. I think clearly there was a mutual mistake between the parties, and that Plaintiff is entitled for that reason to a Decree setting aside the settlement.

"3. Judgment will be rendered, setting aside the settlement. But I desire to make it clear that I do not want my findings of facts or conclusions on the law here to shape or control the findings and conclusions before the Industrial Accident Board or before any Court to which the matter may be appealed. All that I mean by the Judgment to be rendered is for the settlement to be set aside so that Plaintiff may have a full hearing of his matter before the Industrial Accident Board and/or before any Court to which the matter may be appealed, without reference to what I do here."

Without undertaking to pass on the question of the mental capacity of the plaintiff, McWilliams, at the time of the execution of the release, we think the Court below was correct in its findings and conclusions on the issue of mutual mistake, in that McWilliams, the physician, and the agent of the insurance company, were mutually mistaken as to the extent, type, and duration of the injuries to plaintiff, whom each then thought had recovered and could resume his work.

■ It is not essential that fraud be shown before a compromise agreement can be canceled. The defendant was guilty of no fraud or misrepresentation, but it is the law of Texas, as well as elsewhere, that a mutual mistake, irrespective of fraud, is sufficient ground for rescission or cancellation of such an agreement. In 7 Tex.Jur. 927, § 28, it is said: "Regardless of any question of fraud, cancellation or rescission may be had where it appears that the parties contracted in ignorance of or under a mistake as to fact which was material and essential to an understanding of the consequences of the agreement, and that this mutual mistake has resulted in injury to one of the parties."

In 29 Tex.Jur. 707, § 5, it is said: "It is a general rule that an act done or a contract made under a mistake or ignorance of material facts is voidable and relievable in equity. To afford ground for relief, the mistake must ordinarily be a mutual one, though the rule applies also to cases of studied suppression or concealment of facts by one of the parties to the transaction."

In 9 Tex.Jur. 348, § 16, it is said: "A compromise and settlement will be set aside by the courts only upon the familiar grounds of fraud, undue influence, accident or mistake. " * * * While the court will grant relief to a party where it is shown that a compromise has been made under a mutual mistake of fact, no ground for rescission exists by reason of a mistake or ignorance of law by one party, not induced by fraud, and unmixed with fact."

■ We do not intend here to announce any general rule as a guide to courts in cases of this type generally, but merely to dispose of this case on its peculiar facts and circumstances, as to which we think that a court of equity would have failed in the function for which it was established had it not set aside the compromise settlement in this case in order that such full and further inquiry as the Industrial Accident Board of the State of Texas, or any court

of appropriate jurisdiction, may see fit to make as to the cause, extent, and duration of the plaintiff's injury.

The judgment of the Court below is Affirmed.