# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 7, 2020

Lyle W. Cayce
Clerk

No. 19-51073
Summary Calendar

DAVID EVAN SCHANZLE,

*Plaintiff—Appellant*,

*versus*

SUSANA HABERMAN; JONATHAN P. GEBHART; MICHAEL GALDO; BRAD BARBER; LAUREL VANT; JEFF NEFF; MARK LANE, *U.S. Magistrate Judge*; 6 TO 8 UNKNOWN GOVERNMENT AGENTS,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-933

Before KING, GRAVES, and WILLETT, *Circuit Judges*.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 19-51073

Plaintiff David Schanzle alleges that on October 24, 2018, federal agents searched his property and seized: "every private personal and business record, driver license, credit cards, bank records, check books and checking records, voting registration card, property tax statements"; "a cell phone"; "his life savings," "between $2 and $3 million dollars in assets," including "gold and silver coins and US currency"; and "all computers," including "eleven computers, two iPads, several external hard drives, CD's, thumb drives." Am. Compl. ¶¶ 12, 24, 26, 49. He alleges that the agents used unreasonable force, humiliated him, and exposed bystanders to toxic fumes by drilling into a safe. Am. Compl. ¶ 60–72.

Schanzle further alleges that he asked the agents for a warrant, and they gave him a document that referenced Attachments A and B for identification of the persons or property to be searched and seized. Am. Compl. ¶¶ 13–14. Schanzle alleges that he requested Attachments A and B from the agents on the day of the search, to no avail. Am. Compl. ¶ 16. Schanzle alleges that, five days later, he made the same request of the clerk of court, who told him that "the affidavit of probable cause was not available and was under the seal of the court." Am. Compl. ¶ 17.

Schanzle, proceeding pro se, sued the agents, the magistrate judge, and the prosecutor (the Government), contending that their conduct violated the Fourth and Eighth Amendments and federal statutes. Granting the Government's motion and overruling Schanzle's objections, the district court dismissed Schanzle's complaint in full. The district court adopted the magistrate judge's conclusion that the Government was entitled to dismissal on all claims because: (1) Schanzle did not overcome judicial and prosecutorial immunity for the magistrate judge and prosecutor; (2) Schanzle did not state a Fourth Amendment claim based on the warrant Attachments, the agents' force, his humiliation, or the toxic fumes; (3) Schanzle did not

state an Eighth Amendment claim; and (4) Schanzle did not state a statutory claim.

For the same reasons the district court gave, we agree as to (1), judicial and prosecutorial immunity; (4), the statutory claims; and the portion of (2) concluding that Schanzle fails to state a Fourth Amendment claim based on the agents' force, his humiliation, or the toxic fumes.

We disagree, however, as to the remainder of (2), the Fourth Amendment claim based on the warrant Attachments. This record contains inadequate information to support a conclusion that Schanzle fails to state a Fourth Amendment claim.

Finally, we agree with the district court's conclusion as to (3), that Schanzle fails to state an Eighth Amendment claim, but not the district court's reasons.

We address each in turn.

I

We review 12(b)(6) rulings de novo, accepting Schanzle's allegations as true, and holding him to "less stringent standards than formal pleadings drafted by lawyers." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461–62 (5th Cir. 2010). His complaint should not be dismissed unless he fails to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007); *see also* Fed. R. Civ. P. 12(b)(6).

II

As to the Fourth Amendment, Schanzle argues that the warrant was unconstitutional because he has not received Attachments A and B. The Government argues that Schanzle was not entitled to the Attachments at the time of the search.

No. 19-51073

Our precedents demonstrate that the Fourth Amendment permits a warrant to incorporate documents by reference, *United States v. Beaumont*, 972 F.2d 553, 561 (5th Cir. 1992); *accord United States v. Aguirre*, 664 F.3d 606, 614 (5th Cir. 2011),[1] including sealed documents, *United States v. Cherna*, 184 F.3d 403, 412 (5th Cir. 1999).[2] True, we once stated that supporting affidavits must be attached to the warrant to protect "the person whose premises are to be searched." *United States v. Haydel*, 649 F.2d 1152 (5th Cir. Unit A July 1981), *cert. denied*, 455 U.S. 1022 (1982). But our subsequent cases have not interpreted this statement as providing occupants with a Fourth Amendment right to obtain warrant attachments. *See Beaumont*, 972 F.2d at 561 (permitting incorporation by reference in lieu of attachment).[3] In any event, as our sister circuits have concluded, we could not recognize such a right after the Supreme Court decided *United States v. Grubbs*, 547 U.S. 90 (2006).[4]

---

[1] We may consider both civil and criminal cases. *See United States v. Allen*, 625 F.3d 830, 838 (5th Cir. 2010) (concluding in a criminal case it was "was incorrect to distinguish" a Supreme Court Fourth Amendment case "on the basis of its civil origins").

[2] In *Cherna*, the officer could not attach or serve the warrant's incorporated affidavit "because it had been placed under seal." *Id.* We found no Fourth Amendment violation on those grounds because, by issuing the warrant and sealing the affidavit, "the magistrate judge was essentially assuring [the officer] that the warrant, unattached to the affidavit, was sufficient to authorize the search she had requested." *Id.*

[3] *See also Aguirre*, 664 F.3d at 614 ("In reviewing challenges to particularity we read the warrant as a whole, including its accompanying affidavit and attachments.").

[4] *See United States v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006) ("[T]he search warrant properly cross-referenced the Attachment which, in turn, supplied the requisite particularity to the search warrant, regardless of whether the Attachment accompanied or was appended to the search warrant at the time it was executed."); *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 443 (6th Cir. 2006) (failing to provide the occupant with an incorporated affidavit may factor into the reasonableness of a search, but cannot "make a warrant-supported search a warrantless one"); *see also United States v. Pulliam*, 748 F.3d 967, 974 (10th Cir. 2014) (similar).

No. 19-51073

The Court in *Grubbs* rejected the Ninth Circuit's assumption that an "executing officer must present the property owner with a copy of the warrant before conducting his search." *Id.* at 98–99 ("[T]he requirement of particular description does not protect an interest in monitoring searches."). Such a requirement would ignore the Founders' choice not to provide a "license to engage the police in a debate over the basis for the warrant," but instead to "interpos[e], ex ante, the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police'" and "provid[e], ex post, a right to suppress evidence improperly obtained and a cause of action for damages." *Grubbs*, 547 U.S. at 98–99.

So, to the extent Schanzle challenges the search because he was not contemporaneously provided with the Attachments, the district court correctly concluded that he fails to state a Fourth Amendment claim.

But the complaint does not stop there: Schanzle asserts that he has *never* been able to obtain the Attachments. When he asked to view "the affidavit of probable cause," Schanzle alleges, the clerk of court told him it "was not available and under the seal of the court." Am. Compl. ¶ 17. What is more, Schanzle asserts that the Attachments were ordered to be unsealed after 30 days. The Government does not describe or provide the Attachments, or explain why or whether they remain sealed. [5]

And if one or both Attachments did not exist, that would be a problem. The Fourth Amendment limits searches to the particular places where evidence of a suspected crime could reasonably be—for instance, if officers

---

[5] The Government argues that Schanzle failed to pursue criminal remedies for the alleged violations, counseling against recognizing his *Bivens* claim. The Government further argues that Schanzle failed to properly serve his complaint. The district court did not address these arguments, so we will not address them. *Wise v. Wilkie*, 955 F.3d 430, 439 n.39 (5th Cir. 2020).

are looking for evidence of speeding or driving with a suspended license, they would not reasonably expect to find that by searching inside a vehicle. *See Arizona v. Gant*, 556 U.S. 332, 344 (2009) (license); *Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (speeding). Similarly, officers looking for gambling paraphernalia would not reasonably expect to find that by viewing films they happen upon during their search. *Stanley v. Georgia*, 394 U.S. 557, 571 (1969) (Stewart, J., concurring).[6]

Here, the warrant instructs the reader to "see Attachment A" to identify the persons or property the Government asked to search, and to "see Attachment B" to identify what the Government expected the search to reveal and what persons or property would be seized. Am. Compl. Ex. 1. Without Attachment B, then, the warrant does not explain what the Government expects to find.[7]

The district court stated that Attachment A was 32 pages and "described the property and structures to be searched," and that Attachment B "described the evidence, fruits and instrumentalities to be seized during the search." But de novo review does not allow us to take the district court's word for it, any more than the Government's.

On direct review of an order to seal probable cause affidavits (in support of IRS search warrants, as here), we have remanded for the district court to "articulate its reasons" at "a level of detail that will allow for this Court's review." *United States v. Sealed Search Warrants*, 868 F.3d 385, 397–98 (5th Cir. 2017). We explained that the district court's findings,

---

[6] *Cf. Maryland v. Buie*, 494 U.S. 325, 335, (1990) (during protective sweep, it was unreasonable for officers to look for hidden people in a running suit).

[7] Schanzle asserts that Attachment A, included in the record on appeal, was filed in his criminal case.

"conclusory and lack[ing] detail," left us "unable to discern" whether there was an abuse of discretion. *Id.* at 390, 397.

Here, likewise, we cannot evaluate the warrant's Fourth Amendment compliance because we do not know what the Attachments say, and they are the warrant's only source of particularity. And Schanzle cannot be expected to mount his Fourth Amendment claim (nor could a lawyer) without knowing what the Attachments say.

On this record, a finding that the warrant complies with the Fourth Amendment would boil down to trusting the say-so of the Government and the district court. This we decline to do. Schanzle's Fourth Amendment claim cannot be dismissed on this record.

## III

In addition, Schanzle complains that the Government violated the Eighth Amendment by seizing "between $2 and $3 million dollars in assets" without justification. Am. Compl. ¶ 49. The Government argues that Schanzle states no Eighth Amendment claim because he relies on authority about civil *in rem* forfeitures, and no civil forfeiture occurred here.

The district court accepted the Government's argument, concluding that Schanzle failed to state an Eighth Amendment claim because he cited the wrong Eighth Amendment case. But that does not move the ball: a pro se litigant who states a claim is just as likely to "fail[] to cite proper legal authority" as a pro se litigant who does not state a claim. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Of course, the court was not obliged to act as Schanzle's lawyer, but it was obliged to evaluate the alleged facts and the claim's legal standard before concluding Schanzle failed to allege facts to state that claim.

We may, however, affirm "on any basis supported by the record," *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005), and Schanzle's complaint reveals a defect in federal jurisdiction.

To be sure, the Government "may not by exercising its power to seize, effect a [d]e facto forfeiture by retaining the property seized indefinitely." *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1212 (10th Cir. 2001) (quoting *United States v. Premises Known as 608 Taylor Ave., Apt. 302*, 584 F.2d 1297, 1302 (3d Cir. 1978)). Accordingly, "[t]he general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." *Cooper v. City of Greenwood*, 904 F.2d 302, 304 (5th Cir. 1990) (quoting *United States v. Farrell*, 606 F.2d 1341, 1343 (D.C. Cir. 1979)).

In the event that the Government does not return the seized property, however, the Eighth Amendment "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense'" by prohibiting "excessive fines." *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019). The Excessive Fines Clause restricts the Government's power to obtain ownership of seized property, which generally occurs through civil forfeiture proceedings (*in rem* proceedings against the assets themselves) and criminal forfeiture proceedings (proceedings against the owner of the assets). *See Timbs*, 139 S. Ct. at 686, 690; *United States v. Bajakajian*, 524 U.S. 321, 331–32 (1998). Federal statutes also govern the Government's forfeiture powers. *E.g.*, 18 U.S.C. § 981 (civil); *id.* § 982 (criminal).

But "[a] ripe controversy is a necessary component of subject matter jurisdiction," to prevent federal courts from making "premature or speculative" decisions. *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922, 923 (5th Cir. 2017) (quoting *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002)). "We may raise ripeness sua sponte . . . ." *Rosedale*

*Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 90–91 (5th Cir. 2011). And challenges under the Excessive Fines Clause are not ripe before a "final forfeiture order or judgment has been entered." *United States v. Blackman*, 746 F.3d 137, 144 (4th Cir. 2014); *accord United States v. Covey*, 232 F.3d 641, 646 (8th Cir. 2000); *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995).

Schanzle alleges that the agents took and kept "between $2 and $3 million dollars in assets" without any connection to illegal activity. Am. Compl. ¶¶ 49–50, 83–89. But Schanzle alleges no facts, in his complaint or elsewhere in the record, that would show that the Government held Schanzle's seized property according to the entry of a final forfeiture order or judgment. Therefore, his Eighth Amendment claim is not ripe, depriving the federal courts of jurisdiction to consider it.

***

We AFFIRM dismissal of Schanzle's statutory claims; his Fourth Amendment claims based on the agents' force, his humiliation, and the safe's fumes; his claims barred by judicial and prosecutorial immunity; and his Eighth Amendment claim. We VACATE dismissal of his Fourth Amendment claim based on the warrant Attachments. We REMAND for proceedings consistent with this opinion.